UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM MORALES,

    Plaintiff,

vs.           Case No. 2:10-cv-132-FtM-29DNF

DR. LAMOUR and TIM BUDZ,

    Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court upon review of the Motion for Summary Judgment (Doc. #21, Motion), filed on behalf of Defendants Lamour and Budz on January 26, 2011. Defendants submit supporting exhibits (Docs. #22-#27, Exhs A1-A9, B1-B3), consisting of: Plaintiff's relevant medical records (Exh. A), affidavit of Christine Pasquali, the dietician at the Florida Civil Commitment Center ("FCCC") (Exh. B); affidavit of Jacques Lamour, doctor at the FCCC (Exh. C); and affidavit of Timothy Budz, facility administrator of the FCCC (Exh. D). After being granted an extension of time, on February 28, 2011, Plaintiff filed a response (Doc. #30, Response) in opposition to the Motion and attached his own affidavit (Doc. #30-1, Pl's Exh. A).

**I.**

William Morales, a *pro se* plaintiff who is civilly detained at the Florida Civil Commitment Center ("FCCC"), initiated this action by filing a Civil Rights Complaint pursuant to 42 U.S.C. § 1983 on

March 1, 2010. Plaintiff is proceeding on his Amended Complaint (Doc. #5, Amended Complaint), filed April 9, 2010, against Defendants Budz and Lamour, in their official and individual capacities, alleging Defendants were deliberately indifferent to Plaintiff's serious medical conditions in violation of the Eighth Amendment. Amended Complaint at 1, 7. Specifically, Plaintiff alleges that Defendants failed to provide him with a medically necessary diet despite a medical directive. <u>Id.</u> at 6. As a result, Plaintiff states that on November 6, 2007, he was diagnosed as having "three major coronary arteries 100% blocked and one major coronary artery 85% blocked."[1] Amended Complaint at 5-4.[2] As relief, Plaintiff seeks compensatory and punitive damages.

---

[1] Plaintiff had also claimed the FCCC was not providing him with a necessary medical procedure, coronary bypass surgery, for his heart condition based on monetary concerns. Complaint at 4. Plaintiff filed a "motion to voluntarily dismiss" (Doc. #31) this portion of the Complaint. The Court construes the motion as filed pursuant to Fed. R. Civ. P. 41(b) since Defendants had already filed their Motion for Summary Judgment. Defendants, however, do not object to the dismissal of this claim. <u>See</u> Doc. #34. Therefore, the Court will grant Plaintiff's motion and dismiss Plaintiff's Complaint to the extent that he alleges a violation of his constitutional rights stemming from Defendants' failure to provide him with coronary bypass surgery for his heart condition.

[2] Plaintiff inadvertently misnumbered the pages of his Complaint and the page numbers appearing on the Court's Case Management and Electronic filing system are also out of order. For the pinpoint citations herein, the Court refers to the page number that appears on the top of the page according to the Court's CMECF system.

## II.

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." Swisher Int'l, Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The standard for creating a genuine dispute of fact requires courts to "make all *reasonable* inferences in favor of the party opposing summary judgment, Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." Teblum v. Eckerd Corp. of Fla., Inc., 2:03-cv-495-FTM-33DNF, 2006 WL 288932 *1 (M.D. Fla. Feb. 7, 2006). Instead, "[o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary

judgment." Lofton v. Sec'y of the Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004). The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d at 1260(citing Celotex, 477 U.S. at 323). Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007)(quoting Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002)).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party, but those inferences are drawn "only 'to the extent supportable by the record.'" Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010)(quotations omitted). The court, however, "must distinguish between evidence of disputed

facts and disputed matters of professional judgment. In respect to the latter, [the court's] inferences must accord deference to the views of prison authorities." Beard, 548 U.S. at 530. "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)). In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

**III.**

According to the record, Plaintiff had a heart attack in 1993 secondary to his cocaine use. Exh. A at 22. In February 2006, Plaintiff had quadruple bypass surgery. Amended Complaint at 4, 6; Exh. A at 22. And, in March 2010, the month Plaintiff initiated this lawsuit, he underwent stent replacement surgery. Id. at 138. The record shows that Plaintiff was routinely seen by the FCCC medical department for his heart condition and consistently scheduled for medical appointments with specialists for this condition. See Exh A at 108-115. Plaintiff does not challenge the medical care he received for his heart condition and has voluntarily dismissed this part of his claim. See Doc. #31.

The record reveals the following evidence with regard to Plaintiff's diet. In July 2008, Barbara Peterson, a registered nurse at the FCCC, ordered a "healthy heart" and "high fiber" diet for Plaintiff, which consisted of law salt, low fat, and low cholesterol foods.[3] Exh. A. at 328. Again, in June 2009, a medical diet order form signed by the FCCC dietician indicates that Plaintiff was advised to eat oatmeal, wheat bread, egg whites, fruit, raw vegetables, and "all other restrictions" were to be maintained. Id. at 158.

---

[3]The medical order notes reveal the diet consisted of no more than "4 gram sodium/ 60-70 gram fat/300 mg Chol." Exh. A at 328.

On October 8, 2009, Plaintiff submitted a written form, requesting that he be removed from the healthy heart diet list. Id. at 62 (stating "[a]t this time I wish to be on the regular meals."); see also Exh. A at 234 (medical form confirming Plaintiff requested to discontinue his heart healthy diet). In response to his written request, Plaintiff was advised that it was his choice to stop the heart healthy diet, but the heart healthy diet was preferred because of his cardiac status. Id. at 62.

On December 13 2009, Plaintiff requested to speak to a dietician about his diet. Exh. A at 42. On January 8, 2010, Plaintiff was given another medical order recommending a "heart healthy (Low Fat/Low Cholesteral/ No Added Salt)" diet consisting of chicken or tuna when available, salad, raw vegetables, and fruit. Id. at 228.

**IV.**

To survive Defendants' Motion for Summary Judgment on his claims of deliberate indifference, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that he had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that his injury was caused by Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). To show that Defendants Budz and Lamour were deliberately indifferent to his medical needs under the second prong of the Goebert test, Plaintiff must offer some proof

-7-

that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Goebert at 1327. A complete denial of readily available treatment for a serious medical condition obviously constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).

Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. See id. at 393-94; Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990). Plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated in part on other grounds, Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n. 12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730 (2002) . . . the Supreme Court criticized part of the

qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

The Eleventh Circuit has also held that deliberate indifference may be established by a showing of grossly inadequate care, as well as by a decision to take an easier but less efficacious course of treatment. See Steele v. Shah, 87 F.3d 1266, 1269-70 (11th Cir. 1996); Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985). With these precedents in mind, the Court turns to Defendants' Motion.

### V. Findings of Fact and Conclusions of Law

Defendant Lamour moves for summary judgment on the basis that he did not act with deliberate indifference to Plaintiff's medical needs. See Motion. Defendant Budz states that, as the facility administrator, he does not have any medical training and did not participate in Plaintiff's medical care. Motion at 10; see also Exh. D (Budz affidavit). Thus, Defendant Budz avers that Plaintiff appears to attribute liability on him based on the theory of *respondeat superior*. Id. Based upon the record, the Court finds that Defendants are entitled to the entry of summary judgment in their favor for the reasons herein.

The evidentiary materials submitted by Defendants Lamour and Budz demonstrate that Defendant Lamour, and other FCCC medical staff, continually monitored Plaintiff's health. See Exh. A at 5 (showing medical appointment on January 28, 2008 with Defendant Lamour); id. 24-25 (showing medical appointment on February 27, 2008, at which Plaintiff denied chest pain or palpitation); id. at 22-23 (showing medical appointment on February 24, 2009, at which Plaintiff denied chest pain or palpitation); id. at 159 (showing medical appointment October 1, 2009, with Defendant Lamour for heart condition); id. at 228 (showing medical appointment with Defendant Lamour on January 21, 2010, regarding cardiac issues and fact that Plaintiff refused to take some of the medications); id. at 144 (showing medical appointment follow-up with Lamour on February 8, 2010, for cardiac issues); id. at 140 (showing medical appointment with Defendant Lamour because of dizzy spell likely caused by Plaintiff's substantial weight loss, so Defendant Lamour decreased certain medications, discontinued other medications, and placed Plaintiff on a blood pressure check daily for two weeks with two week follow-up).

The record further demonstrates that Plaintiff was also seen by outside medical specialists for his heart condition and at no time did Plaintiff raise concerns about the inadequacy of his heart healthy diet at the FCCC. See Exh. A at 108-112 (showing medical appointment on September 29, 2009, with Dr. Gene Myers at Gene

Myers Cardiac and Vascular Consultants, Inc., for angina pectoris where various tests were recommended; ECG, echocardiogram, nuclear stress test and thallium viability); id. at 107 (showing medical appointment on November 11, 2009, with Doctor Altajar who performed a stress test on Plaintiff, which revealed positive findings); id. at 96-100 (showing medical appointment with Doctor Myers on December 4, 2009, for residual angina pectoris, at which a phone conference was held with Defendant Lamour and nurse Ferrell at the FCCC regarding Plaintiff's heart condition); id. at 93-95 (showing Dr. Myers reviewed Plaintiff's labs and diagnosed Plaintiff with hypercoagulation on December 8, 2009 and recommended coronary angiography); id. 77-79 (showing follow-up appointment with Dr. Myers on February 23, 2010, and another telephone conference with Defendant Lamour, Nurse O'Connell, the Plaintiff's sister, and Dr. Joseph Schiro, the cardiovascular surgeon and organizing a course of action); id. at 140 (showing Plaintiff had an EKG on March 21, 2010); id. at 138 (showing Plaintiff underwent stent replacement surgery on March 31, 2010).

Additionally, the record shows that Defendant Lamour continued to provide medical attention to Plaintiff after his March 2010 surgery. Id. at 134-35 (showing Plaintiff was kept in the infirmary at the FCCC after surgery). On May 18, 2010, Defendant Lamour saw Plaintiff for his heart condition and the notes reflect that Plaintiff was "doing fairly well." Id. at 131. On May 26,

2010, Plaintiff was seen by Dr. Altajar, an outside specialist, for followup after the stent replacement. Id. at 76.

With regard to the heart healthy medical diet, the record contains no evidence to establish that Defendants Lamour and Budz acted with deliberate indifference to Plaintiff's need for a heart healthy medical diet. In July 2008, Barbara Peterson, a registered nurse at the FCCC, ordered a healthy heart diet for Plaintiff, which consisted of law salt, low fat, and low cholesterol foods. Exh. A. at 328. In June 2009, Plaintiff was again prescribed a heart healthy diet. Exh. A at 158; see also Exh. B (affidavit of FCCC dietician). The medical diet form described Plaintiff's diet as "restricted," excluding processed meats, and including oatmeal, wheat bread, egg whites, fruit, and raw vegetables. See id. at 158, 328. In January 2010, Plaintiff was re-prescribed a heart healthy diet. Exh. A at 228. The medical diet order form lists "chicken or tuna, when available, salad, raw vegetables, and fruit." Id. Therefore, the record evidence shows that Plaintiff's heart healthy diet was high in fiber and consisted of low fat, low cholesterol, no added salt foods, no processed meats, chicken, tuna, egg whites, oatmeal, salad, fresh fruit, and fresh vegetables. See Exh. A at 158, 228, 328; Exh. B. Plaintiff produces no evidence to show that his heart healthy diet did not consist of these food choices.

It is undisputed that in October 2009, Plaintiff requested to be taken off the heart healthy diet. Exh. A at 62. On the communication form, Plaintiff wrote "[p]lease remove me from the diet list. At this time I wish to be on the regular meals." Id.; see also Exh. A at 234; Reply at 2. In response to Plaintiff's request, FCCC medical staff specifically advised Plaintiff that he should remain on the healthy diet, but it was his choice if he wished to stop the diet. Id.; see also Exh. B (stating dietician meet with Plaintiff and advised him to maintain the heart healthy diet, but Plaintiff said he "did not want to hear it.").

The Court finds the record lacks any evidence explaining why Plaintiff requested regular meals instead of his heart healthy diet meals in October 2009. In response to the Defendants' Motion, Plaintiff for the first time, alleges that the heart healthy diet was no different from the other FCCC resident's regular diet. Reply at 2. However, as discussed above, the record shows that the heart healthy diet was restricted, high in fiber, low in fat, low in cholesterol, with no added salt. Significantly, nothing in the record shows that Plaintiff ever informed the medical department, specifically Doctor Lamour, that his heart healthy diet was inadequate and did not consist of those food items listed on the medical diet order forms.

Assuming *arguendo* that the heart healthy diet was inadequate, there is nothing in the record that shows Defendant Lamour or

Defendant Budz, knew that the food services department was not providing Plaintiff with a heart healthy diet and was doing so to cause harm to Plaintiff. In fact, nothing in the record shows that Plaintiff <u>ever</u> discussed his alleged inadequate diet with Defendant Doctor Lamour, Defendant Budz, or any of Plaintiff's outside medical specialists. <u>See</u> Exh. A.

The Court also finds nothing in the record to indicate that Plaintiff's heart healthy diet, or lack thereof, contributed to his heart problem. In fact, medical notes from Plaintiff's outside cardiologist's indicate:

> It is relatively clear to myself that dietary intake is **not** the likely culprit in causing the problem, and likewise we can find no definite cause resulting from Mr. Morales lifestyle living-in other words we certainly can't blame the problems on anything he is doing or eating that is in noncompliance with that which we recommended.

Exh. A at 79 (Dr. Myers' notes)(emphasis added). Based on the foregoing, the Court grants the Defendants' Motion for Summary Judgment.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Plaintiff's "motion to voluntarily dismiss" (Doc. #31) construed as a motion pursuant to Fed. R. Civ. P. 41(b) is **GRANTED**. Plaintiff's claim alleging deliberate indifference for failure to provide him with coronary bypass surgery for his heart condition is **DISMISSED** pursuant to Fed. R. Civ. P. 41(b).

2.  The Motion for Summary Judgment (Doc. #21) filed on behalf of Defendants Lamour and Budz is **GRANTED**.

3.  The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, on this __8th__ day of June, 2011.

_____
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record